## In re Smolak et ux.

*George T. Robinson* and *J. Lawrence Davis,* for exceptants.

*James T. Kitson,* county solicitor, for county.

Davis, P. J., March 16, 1954.—This matter comes before the court on exceptions to the report of viewers filed by the Delaware River Joint Toll Bridge Commission and relates to costs of the view.

The Delaware River Joint Toll Bridge Commission condemned the property of Louis Smolak and Irene Smolak incident to the construction of the bridge across the Delaware River at Delaware Water Gap, Pa. In due course viewers were appointed and rendered their report awarding damages to claimants and placing costs of the view in the sum of $197 on the bridge commission. These costs may be segregated as follows: Viewers' compensation, $105.00, stenog-

rapher's compensation for taking testimony at hearing, $65; stenographer's compensation for typing viewers' report, $10; witness fees for petitioner, $6; witness fees for the commission, $9; prothonotary's fee for certificate of lien, $1, and recorder of deeds' fee for certificate of lien, $1. Although the question of the fees of the clerk of the court of quarter sessions as a result of these proceedings are not directly before us we will take judicial notice of the fact that they are an integral part of the question in considering this matter.

The board of view in support of its position cites Glessner et al. v. Pennsylvania Turnpike Commission, 44 D. & C. 604, and Brenner v. Pennsylvania Turnpike Commission, 45 D. & C. 124.

In the first cited case the matter before the court related only to claimant's costs in the total sum of $48.48, $20 of which was costs relative to service of a subpœna, the balance not being itemized in the opinion. Obviously, viewers' fees and other similar costs were not before the court in this case. Therefore, at best this case would not be authority for assessing viewers' fees, stenographer's fees and other similar charges against the bridge commission. This case is not controlling for another reason. The act authorizing the Pennsylvania Turnpike Commission to condemn land authorizes payment of costs by the commission: Act of May 21, 1937, P. L. 774, sec. 3(d), 36 PS §652c(d); sec. 6, 36 PS §652f. Whereas, the act relating to the bridge commission provides the commission may acquire real property "in the same manner . . . as the Highway Department of the Commonwealth may acquire lands by condemnation for highway purposes:" 36 PS §3401, art. X, sec. (f). We further note that this case is in the court of common pleas. Since viewers' proceedings are in the court of quarter sessions, we conclude that this question

arose on appeal from report of viewers and trial in common pleas. For this reason the case is not in point. Costs on appeal are within the control of the court of common pleas.

"In all matters, proceedings, and hearings before the courts of common pleas relating to the exercise of the right of eminent domain, and in the laying out, opening, viewing, and reviewing of public or private roads, and claims for damages to property by reason of the exercise of the right of eminent domain, it shall be lawful for the court hearing such proceedings to make such orders relative to the payment of the necessary costs incurred as to the court shall appear right and just": Act of June 21, 1939, P. L. 651, sec. 1, 36 PS §2442.

Also see Tunison v. Commonwealth, 347 Pa. 76.

Costs before viewers are controlled by specific statutes which will be cited and discussed subsequently in this opinion.

The second cited case involving the Turnpike Commission is not controlling for reasons hereinbefore stated.

At the argument on the exceptions the county solicitor appeared for the County of Monroe, argued the case, and presented a well-reasoned and exhaustive brief. He concluded that the county was liable for compensation of viewers, compensation of stenographers and fees of the prothonotary and recorder of deeds for certificate of liens. We agree with his conclusion in this respect.

The Act of June 23, 1911, P. L. 1123, 16 PS §3111 to 3120, is a comprehensive statute establishing a board of viewers and specifying their qualifications, procedure before the board, etc. Section 8 of the Act of June 23, 1911, P. L. 1123 (16 PS §3117) provides as follows:

"The boards of viewers of the respective counties,

and the boards of view, shall, in the performance of their duties, act in accordance with such rules as shall be adopted by the courts of common pleas of the respective counties, and also under such rules and regulations as they may themselves, with the approval of the proper court or courts of common pleas of the respective counties, prescribe.

"Whenever, in the opinion of the board of viewers, it shall be desirable, accurate stenographic reports of hearings before the respective boards of view shall be kept, and copies of such reports shall be furnished to the parties interested when desired upon the payment of such sums as shall be fixed by rules and regulations of the respective courts of common pleas.

"The said board of viewers shall employ such stenographers and clerical assistants as the county commissioners, or the legislative body of the county, shall authorize. The salary or compensation of such stenographers and clerical assistants shall be fixed by the said county commissioners, or the legislative body of the county, and shall be paid out of the treasury of the proper county, *as shall all other costs attendant upon the discharge by the boards of viewers and boards of view of their duties*." (Italics supplied.)

The Act of May 2, 1929, P. L. 1278, art. III, sec. 176, 16 PS §176, provides as follows:

"The board of viewers may employ such stenographers and clerical assistants, and at such salaries, as shall be authorized by the salary board, or by the county commissioners in counties where there is no salary board."

The Act of May 2, 1929, P. L. 1278, art. III, sec. 171, as last amended by the Act of July 5, 1947, P. L. 1308, sec. 6, 16 PS §171, provides, inter alia, as follows:

"The salary board of each county shall fix the compensation of the members of the board of viewers."

It appears to be the intent of the foregoing acts of assembly to provide that the compensation of the viewers, the stenographers employed by the viewers, as well as "all other costs attendant upon the discharge by the boards of viewers and boards of view of their duties" are to be paid out of the treasury of the proper county.

There is nothing to indicate that either of the parties to the proceedings before the viewers should be liable to reimburse the county for the amounts paid by the county to the viewers and the stenographers.

This seems to be analogous to the case where a party applies directly to a court of record for redress. The salary of the judges and the court stenographer is paid by the government. Neither of the parties to the suit are liable to reimburse the government for the amounts paid.

The county solicitor concluded that the bridge commission was liable for fees for the clerk of the court of quarter sessions (the exact amount is not before the court) and witness fees in the amount of $15. With this conclusion we do not agree.

Under the Act of June 23, 1911, P. L. 1123, supra, the county shall pay "all other costs attendant upon the discharge by the boards of viewers and boards of view of their duties."

As early as 1853 the Supreme Court determined that the word "costs" included officer's fees and witness fees.

"The term *costs* is a comprehensive one, including in its ordinary acceptation, officer's fees, as well as the party's own charges for witnesses, where witnesses can legally be called and examined": Pennsylvania Railroad Company v. Keiffer, 22 Pa. 356, 358.

Webster's New International Dictionary, 2nd ed., defines "attendant" as follows: "Accompanying, connected with or immediately following, as consequen-

tial." Funk & Wagnalls Co.'s Standard Dictionary of the English Language defines the term as: "Following or accompanying in causal connection; accompanying; consequent."

In the main, the clerk of the court's fees arise out of filing of motion for appointment of viewers, issuing certificate of appointment of viewers, filing report of viewers and confirmation of report. All of these acts are necessary for the accomplishment of the purpose of the appointment of viewers. They accompany the viewers' proceeding and are necessary to its validity. Therefore, we hold that these costs are attendant upon the discharge of the duties of the board of viewers and as such are payable by the county.

The act contemplates that witnesses shall be heard: otherwise there would be no need for stenographic reports of hearings. Hearing of witnesses is not only connected with, but is an essential part of the viewers' proceedings as it is now established under the law and common practice. It would not seem that it could be seriously disputed that the hearing of witnesses has a causal connection with the performance of the duties of the viewers, and therefore, is attendant upon the performance of the duties of the viewers and should be paid by the county.

This decision does not change the long established practice in the county. For more than 15 years the writer of this opinion has been familiar with the practice observed in condemnation proceedings by the Commonwealth for State highway purposes. The liability of the county for the payment of these costs has never been questioned.

Counsel for the bridge commission in his brief states that in similar actions in Northampton and Bucks Counties the costs herein involved have been paid by the respective counties without objection.

If the Act of 1911 did not cover the matter of wit-

ness fees we would resort to the Act of May 19, 1887, P. L. 139, sec. 1, 36 PS §2441. Under this statute our conclusion would be the same.

And now, March 16, 1954, exceptions to the viewers' report are sustained. The County of Monroe is hereby adjudged liable for the costs set forth in the report in the amount of $197.